**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

ALICE FRANKLIN, on behalf of herself
and all other similarly situated employees,

        Plaintiffs,

v.

KELLOGG COMPANY,

        Defendant.

No. 2:08-cv-02268-JPM-tmp

---

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR SETTLEMENT APPROVAL**

---

## INTRODUCTION

COME NOW THE PARTIES by and through their counsel of record, and in support of the Parties' Joint Motion for Settlement Approval, state as follows:

Following years of litigation and subsequent arm's-length negotiations between counsel, Named Plaintiff Alice Franklin, individually and on behalf of additional opt-in Plaintiffs, and Defendant Kellogg Company ("Kellogg" or "Defendant") reached a proposed settlement in this case, and now jointly move the Court for approval of that proposed settlement.

Through this joint motion and memorandum, and the declarations and exhibits attached hereto, the parties ask this Court to approve their settlement in this collective action for overtime compensation under the Fair Labor Standards Act ("FLSA"), and to dismiss this case with prejudice. As explained in detail below, this settlement is a fair, adequate, and reasonable resolution to a bona fide dispute between the parties.

1

**DISCUSSION**

**I.      SUMMARY OF LITIGATION.**

Plaintiff Alice Franklin originally filed this collective action Complaint on May 2, 2008. (ECF No. 1.) Plaintiff brought the case under the FLSA on behalf of herself and all other hourly production employees who worked at Defendant's plants throughout the country in the last three years. Plaintiff alleged that Defendant failed to pay her and other similarly situated employees for time the employees spent donning and doffing company issued uniforms and personal protective equipment and walking to and from time clocks and the locker rooms after donning and before doffing. (See generally id.) Defendant denied these allegations and asserted several affirmative defenses, including that the walk time at issue is *de minimis* and therefore not compensable. (ECF No. 273.)

On September 2, 2008, Plaintiff filed a motion for conditional certification of the FLSA collective action pursuant to Section 216(b) of the FLSA. (ECF No. 87.) At that time, Plaintiff included Defendant's twenty-nine (29) domestic manufacturing plants within the scope of her certification motion. (Id.) On October 17, 2008, Defendant filed an opposition to Plaintiff's conditional certification motion and a motion for summary judgment on Plaintiffs' claims. (ECF No. 119.) This Court granted Defendant's summary judgment motion, denied Plaintiffs' conditional certification motion as moot, and entered an order dismissing the case with prejudice on July 20, 2009. (ECF No. 265.) Plaintiffs timely appealed. (ECF No. 266.) On August 31, 2010, the Sixth Circuit affirmed this Court's decision that the time Plaintiff spent donning and doffing was not compensable pursuant to Section 203(o) of the FLSA but reversed the Court's decision on Plaintiff's walking time claims. The Sixth Circuit remanded the case to this Court to decide the length of time it took Ms. Franklin to walk from the changing area to the time clock

and whether the time was *de minimis*.  Franklin v. Kellogg Co., 619 F.3d 604, 620 (6th Cir. 2010).

Following remand, Defendant again moved for summary judgment.  Defendant argued that it was not required to compensate Plaintiff for her walking time because the *de minimis* doctrine applied.  (ECF No. 273.)  Plaintiff in turn filed a renewed motion for conditional certification, this time seeking certification of Plaintiff's walk time claims at just Defendant's five manufacturing plants in Rossville, TN, Memphis, TN, Battle Creek, MI, Lancaster, PA, and Omaha, NE ("the Plants"). (ECF No. 279.)  On September 26, 2011, the Court denied Defendant's motion for summary judgment without prejudice, and then conditionally certified a collective class consisting of all hourly production workers employed on or after October 26, 2008 at the Plants.  (ECF No. 311.)  The Court stated: "At issue is the amount of back wages claimed due opt-in class plaintiffs for time spent walking between their respective time clocks and uniform change areas after donning and before doffing on each shift worked.  (Id.)

On October 31, 2012, Plaintiffs' Counsel mailed court-authorized notice to potential opt-ins.  (Srey Decl. ¶ 3.)  As a result of the notice, another 117 individuals consented to join the 245 other individuals who had previously joined the case.  (Id.)  The opt-in period closed on January 6, 2012.  (Id.)  Including the Named Plaintiff, a total of 422 consent forms were filed in this case. (See Dkt. Generally.)  The parties subsequently conducted additional discovery, including Plant visits, and agreed to attend a mediation session in June 2012.  (Srey Decl. ¶ 4.)

## II.     BACKGROUND AND TERMS OF SETTLEMENT.

### A.     Data Analysis and Mediation

In the months leading up to mediation, Defendant provided Plaintiffs' Counsel with payroll information for Plaintiffs to conduct a damages analysis.  (Id. ¶ 5.) The parties also

3

reached an agreement on the walking time estimates (by gender) to be used in the damages analysis based on Plaintiffs' Counsel's Plant visits, information gathered from the opt-in Plaintiffs, and walking time information gathered by defense counsel. (Id.) Of the 422 individuals who had filed consents, the parties agreed that only 398 would be included in the scope of the settlement discussions because the other twenty-four individuals who opted-in to the case either voluntarily withdrew from the case, Kellogg's records showed that the opt-in did not perform work for Kellogg as an hourly production employee during the applicable limitations period, or they did not work at one of the Plants. (Ex. 1, ¶ 16.) With the payroll data for the 398 Plaintiffs and walking time estimates for each of the Plants, Plaintiffs' Counsel calculated damages due to the 398 Plaintiffs.

On June 14, 2012, in Battle Creek, Michigan, the parties engaged in mediation with a mediator experienced in FLSA matters, Mr. Allen Blair of Harris Shelton Hanover Walsh, PLLC. (Srey Decl. ¶ 6.) At mediation, the parties engaged in good faith, arm's length negotiations, but failed to reach an agreement. (Id.) In the months following mediation, the parties continued settlement discussions. On December 14, 2012, the parties tentatively reached an agreement that was later memorialized in a Joint Stipulation of Settlement and Release ("Settlement Agreement"). (Srey Decl. ¶ 7, Ex. 1.)

### B. Settlement Amount and Allocation

Defendant has agreed to pay a maximum total settlement sum of $550,000.00 to resolve this matter in its entirety. (Ex. 1, ¶ 25.) Out of this amount, Defendant has agreed to pay a maximum payout amount of $226,246.00 to the settlement class. (Id.) Plaintiffs' Counsel calculated each settlement class member's pro-rata share of the maximum payout amount (less the $500.00 incentive award described below) based on Plaintiffs' 2-year unliquidated damages

4

analysis. Based on Plaintiffs' Counsel's FLSA experience and evaluation of the specific facts and circumstances in this case, particularly in light of this Court's prior rulings in other cases, Plaintiffs' Counsel determined that proving Defendant willfully violated the FLSA as required to establish a third year of damages, or to obtain liquidated damages, was a very remote possibility with respect to the remaining walk time issue. (Ryan Decl. ¶ 7; Srey Decl. ¶ 8.)

Each individual's pro rata share of the maximum payment amount to the settlement class was reviewed and approved by Defendant and used as the individual settlement offer to each settlement class member. Upon court-approval, each settlement class member will be paid approximately 70% of his or her 2-year unliquidated FLSA claim. (Srey Decl. ¶ 9.)

Individuals with allocations less than $200.00 will nonetheless receive a $200.00 settlement payment. (Srey Decl. ¶ 10; Ex. 2.) As discussed in detail below, Plaintiffs' Counsel are requesting the remaining $323,754.00 to compensate them for all reasonable attorneys' fees, costs, and a total of $500.00 service award of the Named Plaintiff Alice Franklin. Plaintiffs' Counsel will reallocate to Plaintiffs any fees and costs or service awards which the Court does not award to Plaintiffs' Counsel. (Ex. 1, ¶ 26.)

    **C.**    **Notice of Settlement and Opportunity to Reject**

On April 5, 2013, in accordance with the terms of the Joint Stipulation of Settlement and Release, Plaintiffs' Counsel distributed a Settlement Notice to Plaintiffs. (Id., Ex. 2.) The Settlement Notice informed each Plaintiff of the terms of the settlement. (Ex. 2.) Specifically, the Notice informed Plaintiffs of Defendant's individual settlement offer to them. (Id.) The Notice also describes the various factors considered in determining individual allocations. (Id.) The Notice discloses the amount of attorneys' fees and costs Plaintiffs' Counsel will be requesting. (Id.)

The Notice advises Plaintiffs of their options in the settlement. (Id.) Any Plaintiff who does not wish to take part in the settlement may reject the settlement offer. (Id.) If desired, these Plaintiffs will have the opportunity to pursue their claims on their own and will receive the benefit of consent-based tolling if they re-file their claim within thirty days of the Court's dismissal of this case. (Id.) The Notice also outlines the release of claims that is part of the settlement. (Id.) The Notice informs Plaintiffs of the hearing on this motion and of their right to appear at the hearing. (Id.)

## ARGUMENT

The parties have reached a settlement agreement, and notice of the settlement has been distributed to the Plaintiffs. The settlement fairly and reasonably resolves the parties' claims and defenses and the Court should enter an order approving the settlement.

### I.    THE STANDARD FOR SETTLEMENT APPROVAL.

There are generally two ways in which employees can settle and release claims under the FLSA. First, Section 216(c) of the FLSA allows employees to settle and waive their claims if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor. See 29 U.S.C. 216(c); Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982). Second, in the context of a private lawsuit brought by an employee against an employer under Section 216(b), an employee may settle and release FLSA claims against an employer if the parties present the district court with a proposed settlement, and the district court enters a stipulated judgment approving the fairness of the settlement. Id.; Dillworth v. Case Farms Processing, Inc., 2010 WL 776933, at *2 (N.D. Ohio Mar. 8, 2010). Before approving a settlement, a court should ensure that the parties are not negotiating around the FLSA's requirements and that the settlement represents a fair and reasonable resolution of a bona fide

dispute. Id.; Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp., 497 F.3d 615, 631 (6th Cir. 2007). The adversarial process helps assure that resolution of an FLSA claim is not "a mere waiver of statutory rights brought about by an employer's overreaching." Lynn's Food Stores, Inc., 679 F.2d at 1354.

When determining whether a class action settlement is fair, reasonable, and adequate, courts in the Sixth Circuit look to seven factors: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. Int'l Union, 497 F.3d at 631. There is a strong presumption in favor of settlement agreements and they are a preferred method of resolving class actions. Id. at 632; In re Telectronics Pacing Sys., Inc., 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001).

## II. THE SETTLEMENT RESOLVES A BONA FIDE DISPUTE BETWEEN THE PARTIES.

This settlement resolves a five-year bona fide dispute about whether Defendant fully compensated Plaintiffs for all of their working time. Plaintiffs alleged that Defendant violated the FLSA by failing to compensate them for their donning and doffing and walking time after their donning and before their doffing activities. After the Sixth Circuit affirmed this Court's decision that Section 203(o) barred the donning and doffing claims, Plaintiff continued to pursue the walking time claims. Defendant, in turn, continued to assert that it did not have to compensate for such walking time because the time involved was *de minimis* and/or rendered non-compensable by the Portal-to-Portal Act, among other defenses. (ECF No. 273.) Throughout the procedural history of this case, the parties engaged in a significant motion practice, conducted numerous depositions, and exchanged written discovery prior to agreeing to

7

resolve these claims. Accordingly, it is clear that this matter is indeed a bone fide dispute between Plaintiffs and Defendant.

Further, it cannot be said that this settlement is a "mere waiver" of FLSA rights. Indeed, the amount of each Plaintiff's allocation will represent approximately 70% of their 2-year unliquidated damages. They will receive this settlement money free and clear of attorneys' fees and costs. Certainly, this settlement is a "reasonable compromise" for Plaintiffs.

### III.   THE PROPOSED SETTLEMENT IS A FAIR AND REASONABLE RESOLUTION OF THE PARTIES' DISPUTE.

The parties believe that the settlement is fair and reasonable, and an analysis of the seven factors listed above demonstrates as much. First, the risk of fraud or collusion is minimal because the settlement was reached only after the parties engaged in arms-length negotiations by experienced counsel with the assistance of a qualified mediator and following several years of protracted litigation including an appeal to the Sixth Circuit. See Lynn's Food Stores, Inc., 679 F.2d at 1354 (recognizing that courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as an indication of fairness).

Second, the settlement eliminates the inherent risks and expense both parties would incur if this litigation were to continue through resolution on the merits through trial. Continued litigation would bring with it the threat of decertification, summary judgment, and/or a verdict in favor of Defendant. Likewise, continued litigation would involve additional expenses for Defendant, as well as the inconvenience and disruption of litigation and a trial.

Third, the parties have already engaged in extensive formal and informal discovery, which has enabled Plaintiffs' Counsel to assess the value and merits of their claims, including claims relevant to various damages issues (e.g., willfulness and liquidated damages) and Defendant's defenses.

Fourth, although Plaintiffs remain confident that they would succeed at trial on the merits, there is no guarantee that they will prevail, and this settlement provides relief to Plaintiffs while allowing them to avoid a complex and lengthy trial with an uncertain outcome. The uncertainty of trial is contrasted by the certainty and finality that comes with this settlement. Dillworth, 2010 WL 776933, at *5.

Fifth, Plaintiffs' Counsel are experienced in litigating nationwide class and collective action lawsuits with issues similar to the present case.[1]  Based on their knowledge of the case and the applicable law, they believe that the settlement is fair, reasonable, and adequately represents Plaintiffs' interests. Courts are permitted to give the opinion of plaintiff's counsel substantial deference in approving settlement agreements. See, e.g., Manners v. Am. Gen. Life Ins. Co., 1999 WL 33581944, at *27 (M.D. Tenn. Aug. 11, 1999). Defense counsel is likewise experienced in defending similar claims. Counsel for both sides have advised their respective clients regarding the settlement, and they have recommended judicial approval thereof; this Court should afford that recommendation some weight. See Houston v. URS Corp., 2009 WL 2474055, at *7 (E.D. Va. Aug. 7, 2009). A court is entitled to rely on the judgment of experienced counsel for the parties in performing this balancing task, and absent fraud, collusion Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977); Lynn's Food Stores, Inc., 679 F.2d at 1354 (recognizing that courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as an indication of fairness).

Sixth, each of the 398 Plaintiffs included within the scope of the settlement has been given the opportunity to reject the settlement offer and/or appear at the approval hearing. Since the settlement notice was distributed to the settlement class members, only one opt-in Plaintiff,

---

[1] See Ryan Decl. ¶¶ 6-7; Srey Decl. ¶ 14, Ex. 5.

Arnold Hammond, has rejected the settlement.  He has filed his written rejection with the Court.  (ECF No. 385.)  Mr. Hammond's rejection prompted this Court to request additional information from the parties regarding the notice, to which the parties promptly responded.  (ECF Nos. 386, 387, 388.)  The reaction of the Plaintiffs to the settlement also supports a finding that the settlement is fair and reasonable.

Lastly, approval of the Settlement Agreement would promote the strong public interest in encouraging the settlement of class litigation.  Int'l Union, 497 F.3d at 633 (affirming approval of settlement agreement, citing "the federal policy favoring settlement of class actions"); In re Telectronics, 137 F. Supp. 2d at 1008 (same).  The balance of all of these factors demonstrates that the settlement is a fair and reasonable resolution of a bona fide dispute.  See e.g., Dillworth, 2010 WL 776933, at *6, 9 (ruling that, based on the balance of factors, the settlement agreement was a fair and reasonable resolution).  For all of these reasons, this Court should approve the settlement.

### IV. PLAINTIFFS' COUNSEL'S REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE AND SHOULD BE FULLY AWARDED.

In connection with this motion, Plaintiffs respectfully move this Court for an order approving as reasonable, Plaintiffs' Counsel's request for attorneys' fees and out-of-pocket litigation costs totaling $323,754.00.

The FLSA provides: "the court in such actions shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. §216(b).  The purpose of the fee provision in § 216(b) is "to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances."  United Slate, Tile & Composition Roofers, Damp &

Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co., 732 F.2d 495, 502 (6th Cir. 1984). Indeed, an award of attorneys' fees in an FLSA case "encourage[s] the vindication of congressionally identified policies and rights. Macklin v. Delta Metals Co., Inc., No. 2:08-cv-02667-JPM-cgc, at *11 (W.D. Tenn. July 6, 2011) (McCalla, J.) (attached as Exhibit 6) (quoting United Slate, 732 F.2d at 503)).

An attorneys' fee award must be reasonable. Reed v. Rhodes, 179 F.3d 453, 471 (6th Cir. 1999). What constitutes a reasonable fee is within the sound discretion of the district court. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The amount of fees that constitutes a reasonable attorneys' fee "must be determined on the facts of each case." Ford v. Tennessee Senate, 2008 WL 4724371, at *5 (W.D. Tenn. Oct. 24, 2008) (citing Hensley, 461 U.S. at 429). A fee is reasonable if it is adequately compensatory to attract competent counsel, but does not produce a windfall for attorneys. Id.; Dillworth, 2010 WL 776933, at *7.

Federal courts ordinarily utilize the "lodestar" method of calculating a reasonable amount to compensate a litigant for attorneys' fees when they are recoverable. See, e.g., Isabel v. City of Memphis, 404 F.3d 404, 415 (6th Cir. 2005); Branson v. Harrah's Tunica Corp., et al., No. 2:08-cv-o2804-BBD-cgc, 2011 WL 3678428, at *1-2 (W.D. Tenn. Aug. 19, 2011). Notably, the lodestar figure is *presumed* to be a reasonable fee. City of Riverside v. Santos, Rivera, 477 U.S. 561, 568 (1986) (emphasis added).

Here, the parties' settlement provides for Plaintiffs' Counsel to seek the Court's award of $323,754.00 for reasonable attorneys' fees and costs. (Ex. 1, ¶ 26.) Of this amount, $282,962.63 is for Plaintiffs' Counsel's attorneys' fees and $40,791.37 for their out-of-pocket litigation costs. (Srey Decl. ¶ 11, Ex. 4.) Plaintiffs' Counsel's work on this case has resulted in settlement payments, if settlement is approved, for 398 individuals who would likely have received nothing

in the absence of Plaintiffs' Counsel's relentless efforts. Indeed, Plaintiffs' Counsel could have easily given up on these claims after they lost summary judgment back in the Summer of 2009. But, Plaintiffs' Counsel did not, and at great risk and expense to themselves, continued to press forward, and changed the law in the Sixth Circuit to the benefit of not only the settlement class members in this case, but to other employees who are faced with similar issues. If the settlement is approved as proffered, the settlement class members will receive approximately 70% of their 2-year unliquidated damages. (See Srey Decl. ¶ 9.) Securing these individual payments that provide settlement class members with substantial recovery as well as helping to change the law in this Circuit weighs in favor of the requested award.

Further, Plaintiffs' Counsel's total lodestar is $702,263.75. (Srey Decl. ¶ 12; Ryan Decl. ¶ 12.) The requested attorneys' fees is approximately $419,000.00 less than Plaintiffs' Counsel's lodestar.[2] Plaintiffs' Counsel's billing records are attached hereto as Exhibit 3 to Srey Decl. and Exhibit 1 to Ryan Decl. Mr. Ryan, a partner at the Donati Law, PLLC in Memphis, has been licensed since 1999 and has extensive experience representing employees in employment cases, including complex wage and hour litigation. (Ryan Decl. ¶¶ 6-7.) Mr. Ryan's current billing rate is $300.00/hr. Mr. Ryan has served as the President of the Memphis Bar Association's Labor & Employment Section, the President of the Federal Bar Association's Memphis Mid-South Chapter, and is a frequent presenter on employment law issues (including wage and hour issues) at continuing legal education seminars in the Memphis, Tennessee. (Id. ¶¶ 9-10.) He has successfully tried multiple jury and bench trials, amassing more jury trial experience in

---

[2] In addition to the fees and costs outlined in Exhibits 3 and 4, Plaintiffs' Counsel will continue to expend time and resources representing Plaintiffs. For instance, Plaintiffs' Counsel will communicate with Plaintiffs throughout the settlement process, attend the approval hearing, ensure that the settlement agreement is carried out according to its terms, and continue to respond to questions from Plaintiffs regarding the case going forward.

employment cases than many other attorneys in the Western District of Tennessee who have been practicing much longer. (Id. ¶¶ 6-7.)

Ms. Srey is partner at Nichols Kaster, PLLP ("Nichols Kaster"), one of the premier wage and hour law firms in the country. (Srey Decl. ¶ 1.)[3] Ms. Srey has been licensed and has worked for Nichols Kaster since 2004. (Id. ¶ 13.) Since that time, her practice has focused primarily on large wage and hour class and collective action cases. (Id.) She has tried two FLSA collective actions to verdict, and along with Mr. Ryan, obtained a $3.8 million judgment against an employer in a jury trial before this Court. Ms. Srey has handled dozens of wage and hour cases during her legal career, is a frequent speaker nationally and locally on wage and hour topics, and has authored several written materials on wage and hour issues. (Id. ¶¶ 14-15.) Ms. Srey's current billing rate is $400.00/hr. (Id. ¶ 18.)

Plaintiffs' Counsel's time also includes substantial support staff time spent contacting and interviewing all of the individuals who have opted-in to this litigation since the inception of this litigation. (See Ex. 3.) This time is billed at $175/hr. As the Supreme Court has recognized, "encouraging the use of lower cost paralegals rather than attorneys wherever possible . . . encourages cost-effective delivery of legal services." Missouri v. Jenkins by Agyei, 491 U.S. 274, 288 (1989). These staff rates should be found reasonable to encourage the use of lower cost staff in place off attorney time. Like Plaintiffs' Counsel's attorneys' fees, Plaintiffs' Counsel's

---

[3] Nichols Kaster's firm's resume is attached as Exhibit 5 to Srey Decl. Nichols Kaster typically staffs their class and collective cases with one or two partners, an associate attorney, a paralegal, and a class action clerk who perform extensive and in-depth investigations of each individual plaintiff's claims, by interviewing clients, gathering and reviewing documents, and analyzing data. (Srey Decl. ¶ 13.) To successfully prosecute a collective action like this one and carry out the firm's goal of cultivating relationships and treating each plaintiff or class member as though he or she is a plaintiff in an individual action, Nichols Kaster keeps the clients and class members updated regularly of the progress of the case. (Id. ¶ 16.)

costs, which total $40,791.37 and are attached as Exhibit 4, are appropriate and were necessary for prosecution of this action.

Further, Plaintiffs' Counsel took this case on a contingency basis and has legal services agreements with the Named Plaintiff and many of the opt-in Plaintiffs. (Srey Decl. ¶ 19.) Those legal services agreements provide for payment of attorneys' fees in the amount of the greater of one-third (33 and 1/3 %) of the total settlement proceeds or the full amount of any attorneys' fees awarded by a decision maker in the case. (Id.) The potential damages in this case was significantly reduced when this Court determined Section 203(o) applied to the donning and doffing claims, which the Sixth Circuit affirmed, leaving only the walking time claims intact. At the five Plants, the walking time estimates ranged from 33 seconds round trip to 4 minutes and twelve seconds, resulting in relatively low damages with significant attorneys' fees in light of this case's procedural history. (Id. ¶ 20.) But, as this Court has previously recognized, in FLSA cases, attorneys' fees and costs sometimes exceed the recovery by Plaintiffs. See Williams v. Hooah Security Servs., LLC, 2012 WL 1022187 (W.D. Tenn. Mar. 26, 2012) (recognizing that attorneys' fees may exceed the amount of damages awarded to plaintiffs given the nature and purpose of the FLSA and therefore "courts should not place undue emphasis on the amount of the plaintiff's recovery"); Macklin, Civ. Case No. 2:08-cv-02667-JPM-cgc, at *5.

In this case, after five years of litigation, Plaintiffs' Counsel secured monetary relief for 398 opt-in Plaintiffs on a walking time claim that was initially dismissed on summary judgment. Because of the fee arrangement, however, Plaintiffs' Counsel have not received any payment for their time spent litigating the case, nor have they received reimbursement for the costs they incurred during the litigation. (Id.) Instead, Plaintiffs' Counsel alone undertook the financial risk of recovering nothing for their time and resources spent litigating the case. Because

14

Plaintiffs' Counsel litigated this case diligently and effectively, they were able to obtain monetary relief for Plaintiffs. This fee agreement should be honored. See In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litigation, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) ("Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees.").

Moreover, the Notice of Settlement advised the settlement class members that Plaintiffs' Counsel's would be seeking the Court to award them $323,754.00 in attorneys' fees and costs to be paid by Defendant to Plaintiffs' Counsel. (Ex. 2.) Other than aforementioned Mr. Hammond, no settlement class member objected to the terms of the settlement providing for Plaintiffs' Counsel to receive $323,754.00 in attorneys' fees and costs. This too should weigh in favor of the reasonableness of the requested attorneys' fees. Finally, Defendant does not oppose this request.

Accordingly, the Court should approve the requested fees and costs. As noted above, Plaintiffs' Counsel's requested fees are approximately $419,000.00 less than their lodestar and the costs were necessarily incurred in litigating this case since May 2008.

## C.  NAMED PLAINTIFF ALICE FRANKLIN SHOULD RECEIVE AN INCENTIVE AWARD.

Under the terms of the parties' settlement agreement, in addition to their individualized allocation from the maximum payment amount Defendant agreed to pay to the settlement class members, and subject to Court approval, the Named Plaintiff will receive an additional award of $500.00 in recognition of her service as a Named Plaintiff.

Courts have approved incentive payments if they are fair and reasonable. See Heath v. Hard Rock Cafe Int'l (STP), Inc., 2011 WL 5877506, at *4 (M.D. Fla. Oct. 28, 2011) (concluding $1000.00 incentive payment of to named plaintiff in FLSA action was reasonable);

Risch v. Natoli Engineering Co., LLC, 2012 WL 3242099, at *3 (E.D. Mo. Aug. 7, 2012) (finding fair and reasonable $5,000.00 incentive payment to named plaintiffs in wage and hour class and collective action); Torres v. Gristede's Operating Corp., 2010 WL 5507892, at *7 (S.D.N.Y. Dec. 21, 2010) (awarding an incentive award of $15,000 to each named plaintiff in the settlement of their FLSA overtime claim); Wineland v. Casey's Gen. Stores, Inc., 267 F.R.D. 669, 677-78 (S.D. Iowa 2009) (approving $10,000 recognition payments to two named plaintiffs in an FLSA and Rule 23 settlement because such payments were fair and reasonable under the circumstances).

This incentive award is fair and reasonable and should be awarded. First, the Named Plaintiff's efforts in bringing this lawsuit and assisting Plaintiffs' Counsel with the investigation of Plaintiffs' claims and the litigation conferred a substantial benefit on the settlement class members. Second, $500.00 is modest and represents 0.2% of the maximum payout amount Defendant agreed to pay to the settlement class. Third, this payment not only recognizes the Named Plaintiff's time and effort and risks taken, but also advances public policy by encouraging other individuals to come forward and protect the rights of others in representative actions such as one. See Yarrington v. Solvay Pharmaceuticals, Inc., 697 F. Supp. 2d 1057, 1062 (D. Minn. 2010) (awarding $5,000 incentive payment to each named plaintiff and stating, "Small incentive awards, which serve as premiums to any claims-based recovery from the settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits.").

Due to the Named Plaintiff's efforts and assistance in settling this matter, as well as the minimal amount being requested as an award, the Court should grant the Named Plaintiff an incentive award in the amount of $500.00.

## CONCLUSION

This FLSA collective action settlement is a product of an arms-length negotiation between counsel that has resolved a bona fide dispute over overtime wages. The settlement is fair and reasonable and provides the settlement class members with monetary relief. Accordingly, the parties jointly and respectfully request that this Court approve the parties' settlement agreement and the distribution of the settlement fund to Plaintiffs as described above. Further, Plaintiffs' Counsel request this Court to award as reasonable the attorneys' fees and litigation costs in the amount requested.

Respectfully submitted this 29th Day of May 2013.

**NICHOLS KASTER, PLLP**

s/Rachhana T. Srey
Rachhana T. Srey (MN State Bar No. 340133)
(W.D. Tenn. Bar Admitted Generally)
NICHOLS KASTER, PLLP
4600 IDS Center
Minneapolis, MN  55402
Telephone (612) 256-3200
Fax (612) 338-4878

Donald A. Donati (TN 8633)
William B. Ryan (TN 20269)
DONATI LAW, PLLC
1545 Union Avenue
Memphis, Tennessee 38104
Telephone: (901) 278-1004
Facsimile: (901) 278-3111

ATTORNEYS FOR PLAINTIFFS


**THE KELLOGG COMPANY BY:**

/s/ Maurice Wexler
MAURICE WEXLER
Tennessee Bar No. 7980
mwexler@bakerdonelson.com

17

BAKER DONELSON BEARMAN, CALDWELL
& BERKOWITZ, P.C.
2000 First Tennessee Building
165 Madison Avenue
Memphis,TN 38103
(901) 526-2000 - Telephone
(901) 577-2303 - Facsimile

JAMES N. BOUDREAU
Pennsylvania Bar No;. 77891
boudreauj@gtlaw.com
(admitted pro hac vice)
GREENBERT GRAURIG LLP
2700 Two Commerce Square
2001 Market Street
Philadelpia, PA 19103
(215) 988-7833 - Telephone
(215) 988-7801 - Facsimile

ATTORNEYS FOR DEFENDANT